UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCINDA MARISSE MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendant. | No. 1:20-cv-00439-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Docs. 19, 20)** |

**I.      Introduction**

Plaintiff Lucinda Marisse Martinez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 19, 20, 21.  After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

**II.     Procedural Background**

On July 6, 2016 Plaintiff applied for disability insurance benefits alleging disability as of June 22, 2016 due to depression, diabetes, neuropathy, high blood sugar, tendonitis, migraines, depression and bipolar. AR 193. The Commissioner denied the application initially on November 18, 2016, and on reconsideration on March 15, 2017. AR 113; 121.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on November 27, 2018. AR 40. On February 26, 2019 the ALJ issued a decision denying

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 12.

1

Plaintiff's application. AR 21. The Appeals Council denied review on December 23, 2019. AR 10. On March 26, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III.     Factual Background[2]

#### A.      Plaintiff's Testimony

Plaintiff lived with her mother and husband. She previously worked in accounts payable but left her job due to stress. AR 45–46. Emotional issues caused difficulty maintaining attendance, meeting deadlines and handling work pressures. AR 56-57. She saw a physician for mental health treatment every six weeks who prescribed her various medications including Lexapro, Trazodone, and Seroquel. AR 53–54. She felt she would be unable to keep up with the demands of her job due to difficulty handling situational stress. AR 64–65. She displayed "halting," slow and deliberate speech which had worsened in recent years. AR 65. She struggled with short term memory but not long-term memory. AR 65–66.

She had ongoing right-hand pain for five years radiating up and down the arm which worsened with use, such as fixing her hair in the morning. AR 49–50. She had difficulty with daily tasks such as cooking and could not hold a phone. AR 51. Her mother and husband helped with the chores. AR 52–53. She could not lift more than five to eight pounds due to hand and grip weakness. AR 53. She could use her hands for five minutes at a time followed by fifteen minutes of rest. AR 53. She had difficulty reaching forward, which she could do for less than one third of the day. AR 63–64. Physical therapy did not improve her arm and shoulder issues. AR 55. She could sit and stand no more than 30 minutes each without pain. AR 53, 57. She had numbness and shooting pains in both legs and feet due to diabetes. AR 58. Her glucose levels were consistently high and had to be checked twice daily. AR 59. Her blood sugar interfered with activities three times per week. AR 59–60. Twice a year she experienced hypertension syncope flare-ups lasting eight days which necessitated rest and inhaler use. AR 61–62.

---

[2] The medical records and opinion evidence concerning Plaintiff's physical impairments are not directly implicated by any of Plaintiff's claims of error. Plaintiff's first and second claims of error concern her mental impairments only. Her third claim of error addresses her physical impairments only insofar as they relate to her subjective complaints and the ALJ's allegedly insufficient reasoning for discounting the same. Accordingly, the summary of medical records and opinion evidence will focus on Plaintiff's mental impairments.

### B. <u>Vocational Expert</u>

The VE classified Plaintiff's past work as an accounting clerk and office manager at the sedentary exertional level per the DOT with specific vocational preparation (SVP) levels of 5 and 7, respectively. AR 68. The office manager position was classified at the medium exertional level as performed. AR 68. The ALJ questioned the VE regarding a hypothetical individual with Plaintiff's vocational profile who could perform work at the medium exertional level with a limitation to frequent reaching with the right upper extremity. AR 68. The VE testified that such an individual could perform Plaintiff's past work as an office manager but not her past work as an accounting clerk (which would require constant reaching).[3] AR 68. If the hypothetical individual were further limited to simple, routine tasks with only occasional performance of complex tasks, all of Plaintiff's past work would be precluded but other jobs existing in significant numbers in the national economy would be available, namely: agricultural produce packer, meat clerk, and merchandise deliverer. AR 70. If the individual would have 10 unscheduled absences per month due to her impairments, no work would be available. AR 71. The VE testified that his testimony was consistent with the DOT. AR 71.

### C. <u>Medical Records</u>

In March 2016 Plaintiff sought treatment for anxiety and stress with Dr. Sievert who diagnosed depression and prescribed Seroquel and Zolpidem. AR 358. She presented with depressed mood and affect with low energy at an April 6, 2016 follow up, whereupon Dr. Sievert refilled medication. AR 359. On April 27, 2016 she reported some improvement and medications were refilled. AR 360. Lexapro was added in June to address sleep disturbance, anxiety, depressed affect and depressed mood. AR 361. She continued regular treatment with Dr. Sievert and her medications were continued. AR 362–63; 573-80.

She reported doing well as of August 10, 2016 with some persistent anxiety and irritability.

---

[3] Interestingly, the ALJ concluded at step four that Plaintiff *could* perform her past relevant work as an accounting clerk (without mentioning any other jobs that Plaintiff could perform). Neither party devotes much attention to this issue. Although it may have been an inadvertent mistake on the ALJ's part, the Court must take the ALJ's opinion on its face. The ALJ's finding that Plaintiff could perform her past work as an accounting clerk is contradicted by the record, and that incorrect finding formed the basis of the ALJ's conclusion that Plaintiff was not disabled. Remand is therefore warranted. The Court will nevertheless address the arguments litigated by the parties in this case.

AR 580. August 17, 2016 treatment notes reflected euthymic and anxious mood. AR 579. September 22, 2016 treatment notes reflected appetite disturbance, fretfulness, depressed mood and depressed affect. AR 578. Plaintiff continued following up with Dr. Sievert throughout 2016, 2017 and 2018 for treatment and medication refills. Some treatment notes reflect that Plaintiff was doing well and euthymic with no new symptoms, though she also periodically reported or exhibited continued depression, anxiety, irritability, fretfulness, relationship difficulties, disturbed sleep, panic attacks and situational stress. AR 573–74; 576–77; 637-40; 644–45; 647. Alprazolam was added in February 2018 for panic attacks. AR 642. Treatment notes reflect Plaintiff was doing well as of June 20, 2018 and August 29, 2018. AR 637–39.

### D. Medical Opinions and Administrative Findings

Plaintiff's treating physician, Dr. Sievert, completed a one-page psychiatric medical source statement on which he rated Plaintiff's abilities in 7 work related areas. AR 562. He opined that Plaintiff had mild limitations in three areas: 1) maintain concentration and attention, 2) understand, remember and carry out simple one or two step job instructions, and 3) deal with the public. AR 562. He opined that Plaintiff had moderate limitations in two areas: 1) receive and carry out instructions from supervisors, and 2) relate and interact with co-workers. AR 562. He opined Plaintiff had marked limitations in two areas: 1) withstand the stress and pressure associated with work, and 2) understand, remember and carry out an extensive variety of technical and/or complex instructions. AR 562. He opined Plaintiff would miss 10 work days per month, that her impairments would last more than a year and that her prognosis was guarded. AR 562.

Non-examining state agency psychologists L. Reback and P. Davis reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. AR 85–86; 103. Both concluded that Plaintiff had no severe mental impairments and no work-related mental limitations. *Id.*

Plaintiff underwent two consultative psychiatric examinations with Drs. Lewis and Murphy. AR 489–94; 629–35. Both ruled out bipolar disorder and Dr. Murphy also ruled out major depressive disorder. AR 493; 635. Both opined that Plaintiff had no work-related mental limitations. AR 493; 635.

## IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### VI. **The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of June 22, 2016. AR 26. At step two the ALJ found that Plaintiff had the following severe impairments: gastroesophageal reflux disease (GERD), diabetes, and bilateral carpal tunnel syndrome. AR 26. The ALJ found that Plaintiff's migraine, nicotine dependence, medial epicondylitis (golfer's elbow), depressive disorder, bipolar disorder and substance abuse disorder were non-severe. AR 27. At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 28. Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) with a limitation to frequent reaching with her right (dominant) hand. AR 28. At step four the ALJ found that Plaintiff could perform her past relevant work as an accounting clerk. AR 33. Accordingly, the ALJ found that Plaintiff had not been under a disability since her application date of July 6, 2016. AR 33.

### VII. Issues Presented

Plaintiff alleges three errors in the ALJ's analysis. First, Plaintiff contends the ALJ erred in omitting mental limitations from Plaintiff's RFC despite acknowledging that Plaintiff suffers from depression and anxiety. Second, Plaintiff contends the ALJ failed to offer sufficient reasoning for discounting her treating physician's opinion. Third, Plaintiff contends the ALJ failed to offer sufficient reasons for discounting her subjective complaints.

#### A. Omitting Mental Limitations from RFC

##### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making

findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### 2. **Analysis**

Plaintiff contends that the ALJ's finding of medically determinable mental impairments at step two mandated the inclusion of mental limitations in her RFC or, at a minimum, mandated additional discussion of those impairments at subsequent stages of the five-step analysis. Neither contention is supported.

At step two, the ALJ found that Plaintiff had medically determinable impairments of depressive disorder, bipolar disorder and substance abuse disorder but that those impairments "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore [not] severe." AR 27. In reaching this conclusion (as required by the regulations) the ALJ conducted the psychiatric review technique (also known as the "special technique") which involves evaluating the impact of mental impairments on four broad categories of functionality (the "paragraph B criteria"): understanding, remembering and applying information; interacting with others; concentration, persistence and pace; and adapting and managing one's self. 20 C.F.R. § 404.1520a(c)(3).

Here, the ALJ found that Plaintiff's medically determinable mental impairments caused mild limitations in each of those four areas. AR 27–28. Plaintiff contends that the ALJ subsequently failed to account for these mild limitations "because the RFC includes no mental limitations whatsoever." As SSR 96-8p explains, however:

> the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8, 1996 WL 374184, at *1.

Plaintiff identifies no authority for the proposition that a finding of mild limitations in the

paragraph B criteria at step two mandates a finding that the impairment is severe, or that the impairment causes limitations that must be included in the RFC. Moreover, the regulations refute that notion. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

Relatedly, Plaintiff contends the ALJ violated the regulatory requirement that she subsequently consider even non-severe impairments when formulating the RFC. Irrespective of severity, all medically determinable impairments are indeed considered when assessing a claimant's residual functional capacity prior to step four. 20 C.F.R. § 404.1545(a)(2). As the undersigned noted in *Denney*, however, there is no requirement that the ALJ do so under any particular heading of her opinion, and "District courts in this circuit have generally declined to find reversible error when an ALJ found the claimant's mental impairments to be non-severe at step two and considered related, additional evidence of the claimant's mental impairments at step four." *Denney v. Saul*, No. 1:18-CV-00689-GSA, 2019 WL 4076717, at *8 (E.D. Cal. Aug. 29, 2019) (collecting cases).

That is precisely what the ALJ did here. At step two she performed the special technique for evaluation of mental impairments. She canvassed the medical, opinion, and testimonial evidence of record relating to Plaintiff's mental impairments and found that they cause no more than mild limitations in the four broad categories of functionality and concluded that the impairments were therefore non-severe. She briefly considered related evidence again at step four but declined to include any mental limitations in the RFC. Thus, the ALJ did consider Plaintiff's non-severe mental impairments in reaching the RFC. *See id.*

    **B.**    **Rejecting Dr. Sievert's Opinion**

### 1. **Applicable Law**

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. **Analysis**

Dr. Sievert opined that Plaintiff had mild, moderate or marked limitations in all areas of work-related functioning and would have 10 unscheduled absences per month due to her mental impairments. AR 562. This opinion was contradicted by the opinions of both consultative examiners and both non-examining state agency psychologists, all four of whom opined that Plaintiff had no work-related mental limitations. AR 86, 103, 493, 635. The ALJ was therefore

required to offer specific and legitimate reasons for discounting Dr. Sievert's opinion.

The ALJ offered the following discussion of Dr. Sievert's opinion:

> This extreme opinion is given little weight, as it is not supported by the evidence of record or the claimant's ability to function. In fact, this opinion is inconsistent with Dr. Sievert's own treatment notes, in which he stated that claimant was doing well (Ex. 19F/1-9, 23F/1). Further the claimant reported being able to care for her elderly mother without assistance from her siblings. (Ex. 23F/4).

AR 32.

First, Plaintiff argues that the ALJ drew improper inferences from Dr. Sievert's observation that she was "doing well" when the same treatment notes document continued mental health difficulties. Indeed, this Court has observed that "fairly stable" and "doing well" are relative terms. *See Perez v. Astrue*, 2009 WL 3011647, at *13 (E.D. Cal. Sept. 17, 2009). This Court has also noted that "[b]y themselves, notations indicating that a claimant is doing well or is stable do not contradict a treating physician's opinion of a claimant's functional limitations." *Barajas v. Berryhill*, 1:17-CV-01551-BAM, 2019 WL 928221, at *7 (E.D. Cal. Feb. 26, 2019). However, Plaintiff overlooks the ALJ's earlier discussion of the mental health records at step two in which she gave a more detailed description of the contents of those records and why they supported her conclusion that Plaintiff's mental impairments were non-severe:

> The longitudinal treatment records do not support the allegations of disabling symptoms associated with these conditions. In July 2016, she reported to her provider that she was doing well (Ex. 6F/8). Treating providers typically noted the claimant had a normal mood, affect, and behavior (Ex. 30F/3). The claimant's mental impairments are mainly treated with medications (Ex. 23F/9). She reported to the examining physician that her mental health symptoms were managed by her regimen of psychotropic medications (Ex. 1 lF/7). Despite the allegations and complaints of mental symptoms, the claimant has required conservative treatment as opposed to inpatient psychiatric hospitalizations since the onset date, suggesting fewer limits than alleged.

AR 27. This explanation was equally applicable to the ALJ's reasoning for rejecting Dr. Sievert's opinion, even though the ALJ did not repeat the same facts again or cite the same records when discussing Dr. Sievert's opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (a

reviewing court may "draw[] specific and legitimate inferences from the ALJ's opinion").

Second, Plaintiff contends the ALJ cherry picked her statement that she "helps" her mother at the expense of other evidence suggesting her mother in facts helps her. On balance, Plaintiff contends "the degree to which Plaintiff provided any care or services for her mother appears remarkably limited." AR 17. To the contrary, Plaintiff's statement to Dr. Lewis was not ambiguous. She stated that on a typical day she would "get up, fix breakfast, and oversee the care of my 86-year old mother." AR 493. Dr. Lewis's notes reflect that this was a direct quote. The ALJ cited that record at step two when making the same observation she made in discounting Dr. Sievert's opinion (that Plaintiff helps her mother), although the ALJ did not cite the same record a second time when discussing Dr. Sievert's opinion. The validity of her reasoning still stands.

The ALJ appropriately rejected Dr. Sievert's opinion as inconsistent with medical evidence and Plaintiff's reported daily activities. *See Ford v. Saul*, 950 F.3d 1141, 1154–55. (9th Cir. 2020).

### C. Plaintiff's Subjective Complaints

#### 1. Applicable Law

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective

---

[4] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

12

medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. <u>Analysis</u>

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 29. Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). The ALJ did so, finding Plaintiff's allegedly disabling symptoms inconsistent with various medical and non-medical evidence, including: 1) lack of diabetic complications or conclusive evidence of neuropathy on nerve conduction studies, 2) a doctor's recommendation for 30-40 minutes of brisk walking 3-4 times a

week even after hospitalization for diabetic ketoacidosis, 3) claimant's report that her diarrhea was well-controlled, 4) normal stability and range of motion on examination of her wrist, elbow and shoulder notwithstanding diagnosis of medial epicondylitis, 5) lack of acute findings on x-ray of her shoulder, 6) full hand strength and range of motion notwithstanding diagnosis of carpal tunnel syndrome, and 7) daily activities inconsistent with disabling symptoms (cooking, cleaning, driving, walking for exercise, caring for her mother without assistance, taking her mother to medical appointments, preparing dinner, cleaning the house, grocery shopping, going camping). AR 29-30.

Plaintiff contends the ALJ improperly discounted her symptoms "merely because they are unsupported by objective medical evidence," which violates existing law. Br. at 18 (citing *Bunnell*, 947 F.2d at 347-48). To the contrary, the ALJ also identified Plaintiff's daily activities as a reason for rejecting her symptoms. Plaintiff also contends as follows:

> The ALJ asserted that Plaintiff completes household chores, runs errands, and shops. Ar. 31. However, Plaintiff's limited ability to perform these activities, with assistance from her husband and mother, is not inconsistent with her testimony. Indeed, she reported that while doing household chores she often has to take breaks to rest due to pain

*Id.* The ALJ identified numerous additional self-reported activities as described above, most of which Plaintiff overlooks. These were clear and convincing reasons for rejecting her testimony. As the ALJ appropriately noted, "while these activities are not determinative of the ultimate issue, they suggest fewer limitations than alleged." AR 31; *see Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.")

**D.** **Step Four Finding**

The ALJ found at step four that "[t]he claimant is capable of performing past relevant work as an accounting clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." AR 33. To the contrary, the VE testified that Plaintiff's past work as an accounting clerk *does* require the performance of work-related activities precluded by the claimant's residual functional capacity. AR 68. The VE testified that the accounting clerk job requires constant reaching and therefore could not be performed by someone with Plaintiff's RFC (which was limited to frequent reaching). AR 68–69. Accounting clerk was the only job identified by the ALJ at step four, and she did not proceed to step five. Thus, her conclusion that Plaintiff was not disabled is unsupported.

Plaintiff made this observation in passing in a footnote during her initial factual summary, but did not argue that it was a basis for remand. Courts generally do not address issues not raised by the parties on appeal. *Crawford v. Gould*, 56 F.3d 1162, 1169 (9th Cir. 1995). Nonetheless, a court may raise an issue *sua sponte* to prevent injustice, *Morales v. Astrue*, 2010 WL 2629571 at *8 (C.D. Cal. June 29, 2010) (No. CV 09-2494-PJW).

### VIII. Conclusion and Remand for Further Proceedings

The ALJ's articulated RFC was supported by substantial evidence, though her step four conclusion regarding Plaintiff's ability to perform past work was not. Remand is therefore appropriate for the ALJ to determine at step four whether Plaintiff can perform any past work considering her RFC and, if not, to determine at step five if she can perform any jobs existing in significant numbers in the national economy. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### IX. Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted. The Clerk of Court is directed to enter judgment in favor of Plaintiff Lucinda Martinez, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 12, 2021**         **/s/ Gary S. Austin**
                     UNITED STATES MAGISTRATE JUDGE